UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AXIS INSURANCE COMPANY,

    Plaintiff,                                         Civil Action No. 08-CV-15298

vs.                                            HON. BERNARD A. FRIEDMAN

INNOVATION VENTURES, LLC, et al.,

    Defendants.
_____/

**OPINION AND ORDER DENYING CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT, DENYING INNOVATION'S MOTION TO STRIKE, DENYING AXIS's MOTION TO CONTINUE AND STAY BRIEFING, GRANTING THE MOTIONS FOR LEAVE TO FILE OVERSIZED BRIEFS, and REQUIRING AXIS TO RESPOND TO INNOVATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT II OF THE COMPLAINT**

This matter is presently before the court on (1) the motion of plaintiff AXIS Insurance Company ("AXIS") for partial summary judgment [docket entry 49]; (2) the motion of defendant Innovation Ventures, LLC ("Innovation") for partial summary judgment on AXIS's Count II [docket entry 52]; (3) Innovation's motion for partial summary judgment on AXIS's Count I [docket entry 53]; (4) AXIS's motion to continue and stay briefing [docket entry 55]; (5) Innovation's motion to strike the affidavit of Mary Schust [docket entry 58]; and three motions for leave to file briefs in excess of the pages limits allowed by the court's local rules [docket entries 57, 60, 61]. Pursuant to E.D. Mich. LR 7.1(f)(2), the court shall decide these motions without oral argument. For the reasons stated below, the court shall deny the parties' cross motions for partial summary judgment on Count I, deny Innovation's motion to strike the Schust affidavit, deny AXIS's motion to continue and stay briefing, grant the motions to file oversized briefs, and require AXIS to respond to Innovation's motion for partial summary judgment as to Count II of the complaint.

This case concerns a dispute over insurance coverage. In April 2008 AXIS issued a one-year "multimedia liability" policy to Innovation covering "Damages and Claim Expenses" resulting from "an Occurrence in connection with Scheduled Media . . . that gives rise to a Claim."[1] The policy defines "damages" as "costs the Insured is legally obligated to pay because of liability imposed by law or Assumed Under Contract"; and "claim expenses," essentially, as court costs and attorney fees. An "occurrence" is defined as "publication, broadcast or other dissemination of Matter," "acts committed in the process of researching, investigating, gathering, acquiring, obtaining, preparing, compiling or producing Matter," or "the licensing syndication, serialization, distribution, sale or lease of Matter," "by or with the permission of the Insured." "Matter," in turn, is defined as "communicative or information content . . . including content disseminated electronically and/or digitally . . . (e.g. via websites, chat rooms, bulletin boards, databases and blogs)." "Scheduled Media" is defined in the policy declarations as "All Advertising performed by or on behalf of the Named Insured" and also "content of www.chaserplus.com and www.5hourenergy.com." Finally, "Claim" is defined as "any of the following against the Insured: 1. a demand or assertion of a legal right . . . ; 2. a suit seeking injunctive relief relating to the types of Claims specified in the Coverage Agreements; 3. any written request to toll or waive a statute of limitations relating to a potential Claim; 4. any arbitration or mediation proceeding; or 5. a written demand for a retraction or correction." The policy identifies in detail the types of claims which are covered[2] and those which are excluded from coverage.[3]

---

[1] A copy of the policy is attached as Exhibit C to Axis's motion for partial summary judgment.

[2] Under section I.A., the policy (as amended by endorsement) covers "Claims for or arising out of:"

1. any form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage, outrageous conduct or prima facie tort;

2. any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;

3. any form of infringement or dilution of title or slogan;

4. any form of infringement of copyright, violation of Droit Moral, passing-off, plagiarism, Piracy or misappropriation of ideas under implied contract;

5. breach of a license to use a third party's trademarked or copyrighted Matter, . . .

6. breach of agreement, breach of confidentiality or promissory estoppel, in connection with the failure to maintain the confidentiality of a source or materials furnished by a source or the failure to portray a source or a subject in a certain light;

7. failure to attribute authorship or provide credit under any agreement to which an Insured is a party;

8. wrongful entry or eviction, trespass, eavesdropping or other invasion of the right of private occupancy;

9. false arrest, detention or imprisonment, abuse of process or malicious prosecution;

10. Unfair Competition or conspiracy, . . .

11. negligent supervision of an employee, . . .

12. [omitted]

13. negligent transmission of a computer virus or malicious code, or any unauthorized access to or posting on a covered website . . .

---

[3] Under section IV, the policy (as amended by endorsement – *see* Innovation's Mot. for Partial Summ. J. on Axis' 1st Count, Ex. F) excludes "Claims for or arising out of any actual or alleged:"

1. breach of contract, . . .

2. breach of any fiduciary duty or fiduciary relationship, . . .

3. intentionally false, misleading, deceptive or fraudulent statement in Advertising or Unfair Competition based thereon;

4. infringement of patent, . . .

5. theft, disclosure or misappropriation of trade secrets, except that this exclusion shall not apply to Claims for or arising from disclosure of trade secrets when the disclosure is made in Scheduled Media;

6. Unfair Competition or unfair or deceptive business acts or practices, but only when not directly related to and alleged in conjunction with a Claim covered in 1. - 9. of Coverage Agreement A.;

7. price fixing, restraint of trade, monopolization, unfair trade practices . . .

8. acts that a jury or court find to be fraudulent or criminal . . .

9. actions, decisions, orders or proceedings by the Federal Trade Commission, Federal Communications Commission or any other federal, state or local governmental regulatory agency;

10. Bodily Injury or Property Damage . . .

11. Bodily Injury caused by the use of any product . . .

12. violations of the Securities Act of 1933, the Securities Exchange Act of 1934, any state blue sky or securities law or any similar state or federal law, . . .

13. Over-Redemption of coupons, awards or prizes from advertisements, promotions, games, sweepstakes, contests and games of chance; . . .

14. unauthorized access to, unauthorized use of, or unauthorized alteration of any computer or system, . . .

15. any delay, interruption or failure of, or damage to any computer or communication network . . .

16. infringement of copyright or any other intellectual property right in any software,

The policy took effect on April 26, 2008. Shortly thereafter, and during the policy period, Innovation filed a number of claims under the policy.[4] AXIS has declined coverage and, moreover, has returned the policy premium to Innovation. In the instant lawsuit, AXIS seeks rescission of the policy on the grounds that it is void *ab initio* due to material misrepresentations made by Innovation in the policy application (Count I). Alternatively, AXIS seeks to avoid coverage based on certain enumerated defenses (Count II).

Count I of the complaint focuses on Innovation's answers to the following three

>   computer program, [etc.] . . .
>
>   17. unsolicited electronic communications by or on behalf of the Insured, including unsolicited faxes, emails and telephone calls. . . .
>
>   18. professional or consulting services that are separate and distinct from the utterance or dissemination of Matter and are performed for others for a fee;
>
>   19. discharge, dispersal or release of any Pollutant or any threats thereof; . . .
>
>   20. Occurrence or other act, error, omission, fact, circumstance, situation, transaction, event or decision that is underlying or alleged in any prior and/or pending litigation, administrative or regulatory proceeding, or Claim as of the Inception Date stated in Item 2. of the Declarations;
>
>   21. infringement or dilution of trademark, trade name, trade dress, service mark or service name;
>
>   22. Contextual Error or Omission.

[4] Specifically, Innovation notified AXIS that during the policy period it had been named as the defendant, or counter-defendant, in the following four lawsuits: *N.V.E., Inc. v. Innovation Ventures, LLC*, No. 2:08-CV-02206 (D. N.J.) (complaint filed May 6, 2008); *N.V.E., Inc. v. Innovation Ventures, LLC*, No. 2:08-CV-02707 (D. N.J.) (complaint filed May 30, 2008); *Innovation Ventures, LLC v. BDI Marketing*, No. 2:08-CV-12711 (E.D. Mich.) (counterclaims filed July 22, 2008); and *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166 (S.D. Cal.) (complaint filed July 1, 2008).

questions on AXIS's Multimedia Liability Coverage application:

> I. GENERAL INFORMATION –
>
>     \*    \*    \*
>
> 3.B. Geographic area in which applicant operates:
> __ Local  __ Regional (multi-state)  __ National  __ International
>
>     \*    \*    \*
>
> V. CLAIM EXPERIENCE –
>
> 24.A.  Have any claims, suits or proceedings been made during the past five years against the applicant or any of the applicant's predecessors in business, subsidiaries or affiliates or against any of their past or present partners, owners, officers or employees?  __Yes  __No
>
> If yes, provide complete details.  Include type of claims, gist of offending matter, name of claimant, amount of defense costs, judgment or settlement, status or final disposition of the claim.
>
> B.  Is the applicant aware of any actual or alleged fact, circumstance, situation or error or omission arising out of the activities described in this application that may reasonably be expected to result in a claim being made against the applicant or any of the person[s] or entities described in 24.A. above?  __Yes  __No
>
> If yes, please explain and provide details:

Pl.'s Mot. for Partial Summ. J., Ex. B.  On April 4, 2008, Innovation answered Question 3.B. by checking the "Regional (multi-state)" box and indicating "MI, IN, SC, GA, TX."  Innovation answered Questions 24.A. and 24.B. by checking the "No" boxes. *Id.*

AXIS argues that these answers were misrepresentations.  Regarding Question 3.B., AXIS argues that, in fact, Innovation does not operate in only the five states indicated, but rather nationally and also internationally.  Regarding Question 24.A., AXIS argues that, in fact, a number

6

of "claims, suits or proceedings" had been made against Innovation during the five years preceding submission of the application. And regarding Question 24.B., AXIS argues that, in fact, Innovation was aware of circumstances (i.e., a brewing business dispute with a competitor) which reasonably could be expected to result in claims being asserted against it. AXIS further argues that these misrepresentations were material and entitle it to rescind the policy. Innovation takes the opposite position, arguing that its answers to these questions were neither misrepresentations nor material. Innovation has filed a counterclaim alleging that AXIS breached the insurance policy by denying coverage and, further, that it did so in bad faith.

***AXIS's Motion for Partial Summary Judgment [docket entry 49] and***
***Innovation's Motion for Partial Summary Judgment as to Count I [docket entry 53]***

In these motions, each of the parties seeks summary judgment on AXIS's claim that the policy is void *ab initio* due to Innovation having made material misrepresentations in its application. The parties largely agree on the legal standards applicable to this claim, but interpret the facts differently.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Once a properly supported summary judgment motion has been filed, the burden shifts to the party opposing the motion to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See Anderson,* 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990).

> The dispute in this matter is governed by the following Michigan statute:
>
> (1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.
>
> (2) A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.

Mich. Comp. Laws § 500.2218. The Michigan Supreme Court has held that a misrepresentation is a false statement of fact, and that a fact is material if "communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.'" *Oade v. Jackson Nat'l Ins. Co. of Mich.*, 465 Mich. 244, 253-54 (2001), *quoting Keys v. Pace*, 358 Mich. 74, 82 (1959). In other words, "[t]he proper materiality question under the statute is whether 'the' contract issued, at the specific premium rate agreed upon, would have been issued notwithstanding the misrepresented facts." *Oade*, 465 Mich. at 254. "[T]he focus of inquiry under the statutory 'materiality' test is whether a reasonable

8

underwriter would have regarded [the applicant's] updated answers . . . as sufficient grounds for rejecting the risk or charging an increased premium . . . ." *Id.* at 255. *Accord Montgomery v. Fidelity & Guaranty Life Ins. Co.*, 269 Mich. App. 126, 129 (2005) ("A misrepresentation on an insurance application is material if, given the correct information, the insurer would have rejected the risk or charged an increased premium.").

In the present case, the court cannot decide on summary judgment whether Innovation made material misrepresentations in the insurance application because the facts are disputed both as to whether misrepresentations were made at all and as to whether the alleged misrepresentations were material. AXIS argues that Innovation's answer to Question 3.B. was false because Innovation "operates" in more states (and countries) than Michigan, Indiana, South Carolina, Georgia and Texas. AXIS points to statements by Innovation that its products are advertised and sold throughout the United States and abroad. In response, Innovation acknowledges that its products are widely advertised and sold but suggests that asking where it "operates" is not synonymous with asking where its products are advertised and/or sold. Innovation indicates that the identified states are those where it has its headquarters and production facilities. However, in response to the identical question on past applications for such insurance in 2004, 2005, 2006 and 2007 submitted to AXIS's predecessor, Innovation checked the "International" box (in addition to, in 2007, the "Local" and "Regional (multi-state)" boxes). *See* Morey Decl. Ex. 8. Therefore, it would appear that from 2004 to 2007 Innovation understood Question 3.B. to be inquiring into its advertising operations, not its management or production operations, which would be logical given the type of insurance at issue. Why Innovation answered the question differently in 2008 is unclear. In any event, the word "operates" is sufficiently ambiguous in this context that the court is unable

9

to determine at this time whether Innovation misrepresented the scope of its operations by checking the "Regional (multi-state)" box and listing just five states. This determination will be made at trial, after the court has heard testimony regarding the parties' understanding of the term, their past dealings regarding the term, Innovation's reasons for checking the "International" box on past applications, and any other relevant information.

A finding regarding materiality likewise cannot be made on summary judgment. The question is whether AXIS would have declined to issue the policy, or charged a higher premium, if Innovation had checked the "International" box – assuming it was required to do so in order to answer Question 3.B. truthfully. AXIS's senior vice-president of underwriting, Mary Schust, avers that AXIS would not have offered the policy, or would have quoted a higher premium, "[i]f Innovation had disclosed to AXIS the facts that should have been disclosed but were not disclosed, . . ." Schust Aff. ¶ 12. This averment does not directly address the materiality of Innovation's answer to Question 3.B. Moreover, there is evidence that AXIS was aware that Innovation marketed and sold its products throughout the United States and in foreign countries because Schust was a senior underwriter for AXIS's predecessor, Media/Professional Insurance ("Media"), from 1999 to 2007 and maintained this title when AXIS purchased Media in 2007. Further, the insured websites, www.chaserplus.com and www.5hourenergy.com, plainly show that Innovation's products are available for purchase at a long list of national retail franchises such as Walgreens, Walmart, CVS Rite Aid, Target and Costco, as well as some Canadian retailers. In addition, AXIS was aware that Innovation's advertising expenditures increased dramatically from 2007 to 2008, *see* Schust Dep. at 162, which would suggest an increase in its operations. On this record, it seems doubtful that AXIS would have declined to issue the policy, or that it would have charged a higher premium, if

Innovation had checked the "International" box in response to Question 3.B. Nonetheless, given Schust's contrary averment, the court is constrained to withhold judgment until trial.

The parties next focus on Innovation's "No" answer to Question 24.A., which inquired whether "any claims, suits or proceedings [have] been made during the past five years against the applicant . . . ." AXIS has identified the following three lawsuits brought against Innovation by various parties during the five-year period preceding Innovation's submission of the 2008 application:

> 1. *Teachers for Truth in Advertising v. Innovation Ventures, LLC, et al.*, No.C04-004478 (Cal. Sup. Ct., Contra Costa County) (complaint filed Mar. 15, 2004, asserting claims against Innovation and Longs Drug Stores Corp. for "untrue or misleading advertising" and unlawful, fraudulent and unfair "business acts and practices" under the California Business and Professions Code based on defendants' allegedly false and misleading advertising concerning Innovation's product, Chaser Hangover Prevention Pills).
>
> 2. *Regulatory Affairs Associates, Inc. v. Innovation Ventures, LLC*, No. 07-085622-CK (Oakland County (Mich.) Cir. Ct.) (complaint filed September 6, 2007, asserting claims against Innovation for breach of contract and unjust enrichment based on Innovation's alleged failure to pay plaintiff for consulting services).
>
> 3. *Custom Nutrition Labs., L.L.C. v. Innovation Ventures, L.L.C., et al.*, No. CC-07-14515 (Dallas County (Tex.) County Ct.) (complaint filed October 29, 2007, asserting claims against Innovation for "sale of goods" and breach of contract based on Innovation's alleged failure to pay plaintiff for large quantities of "5-hour Energy" produced by plaintiff at Innovation's request).

*See* Pl.'s Mot. for Partial Summ. J., Ex. P, Q and S. AXIS argues that these lawsuits are "claims, suits or proceedings" which were brought against Innovation during the five-year period preceding submission of the application and that Innovation's failure to disclose them in answering Question 24.A. was a material misrepresentation.

In response, Innovation argues that it did not disclose these three lawsuits because they "did not have any basis for coverage under the AXIS policy. As Ms. Schust . . . explained, the claims that [AXIS] expected applicants to identify on the application include 'any claim that could give rise to coverage under this policy.'" Def.'s Resp. at 4. For support of this interpretation of Question 24.A., Innovation points to Schust's deposition testimony where she appeared to indicate that AXIS did not expect all claims and lawsuits to be reported, but only those "that would be associated with the types of media that is involved, anything that would be in that realm of coverage. . . . We have an expectation that they reveal any claim that could give rise to coverage under this policy, . . . " Def.'s Resp., Ex. 4 at 57, 182. Innovation also notes that a similar question on previous applications, submitted to Media in 2004, 2005, 2006 and 2007, sought information about actual or threatened claims involving only causes of action covered by the policy, *see* Innovation's Resp., Ex. 8 (Question 13), and asserts that "the fact that the AXIS application's slightly differently phrased Question 24.A. was not brought to Innovation Ventures' attention." Def.'s Resp. at 6.

Plainly, Innovation's answer to Question 24.A. was a misrepresentation. The question asked whether "*any* claims, suits or proceedings [had] been made during the past five years against the applicant." The question is not qualified. The question does not ask for claims, suits or proceedings which, in the applicant's opinion, would be or might have been covered under the policy. Quite simply, the question required the applicant to disclose all claims, suits or proceedings that had been brought against it, period. By answering "No," when in truth it recently had been named as a defendant in the three lawsuits identified above, Innovation clearly misrepresented the facts.

Nonetheless, on the present record the court cannot determine whether Innovation's

"No" answer to Question 24.A. was a *material* misrepresentation. Schust avers that AXIS would not have issued the policy, or that it would have charged a higher premium, if Innovation had answered this and Questions 3.B. and 24.B. correctly. Yet at her deposition, as noted, Schust testified that AXIS expected only that "relevant" claims and suits be disclosed, namely, those which "could give rise to coverage under this policy." Schust Dep. at 182. It is unclear which, if any, of the claims asserted against Innovation in the cases identified above would have been deemed "relevant" under this definition. It would appear that the false advertising claims in *Teachers for Truth in Advertising*, and the breach of contract, unjust enrichment and "sale of goods" claims in *Regulatory Affairs Associates* and *Custom Nutrition Labs.*, would have been excluded from coverage under the first, third and eighteenth exclusions of the policy (*see* n.3, *supra*). However, Schust also testified, somewhat confusingly, that a breach of contract claim (which would be excluded) is "actually very relevant . . . [b]ecause it can turn into a covered claim . . . ." Schust Dep. at 183. Whether these particular claims would have caused AXIS to either reject the application or to charge a higher premium simply is not clear on the present record.

Finally, the parties turn to Innovation's "No" answer to Question 24.B., which inquired whether the applicant was "aware of any actual or alleged fact, circumstance, situation or error or omission arising out of the activities described in this application that may reasonably be expected to result in a claim being made against the applicant . . . ." AXIS believes that Innovation's answer was a material misrepresentation because Innovation was aware of, but did not disclose, a brewing business dispute it was having with a competitor, N.V.E., Inc. ("NVE"). NVE and Innovation both produce "energy shots" or "energy drinks" (liquid dietary supplements) in two-ounce bottles. NVE sells its product under the trade name "6 HOUR POWER!" Innovation sells

13

its product under the trade name "5-hour ENERGY." At the time Innovation submitted its insurance application to AXIS, Innovation was in the midst of opposing NVE's efforts to register the "6 HOUR POWER!" mark with the Patent and Trademark Office. Further, in November 2007 Innovation had registered the domain names "sixhourpower.com" and "6hourpower.com," although Innovation has no product by that name. On May 1, 2008, just five days after the policy took effect, Innovation sued NVE in this court for trademark infringement and false designation of origin. *See Innovation Ventures, LLC v. NVE, Inc.,* No. 08-CV-11867 (E.D. Mich.). In response, NVE filed two lawsuits against Innovation in the District of New Jersey. The first, *N.V.E., Inc. v. Innovation Ventures, LLC*, No. 08-CV-02206 (D. N.J.), filed on May 6, 2008, asserted a claim under the Anti-Cybersquatting Consumer Protection Act. The second, *N.V.E., Inc. v. Innovation Ventures, LLC*, No. 08-CV-02707 (D. N.J.), filed on May 30, 2008, asserted that Innovation had embarked on a "false advertisement campaign" by issuing a notice to retailers misrepresenting the scope of a preliminary injunction issued on April 9, 2008, by this court in *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. 08-CV-10983 (E.D. Mich.) (Borman, J.).[5] The 08-02707 action asserted claims

---

[5] Innovation commenced the 08-10983 action on March 7, 2008. It alleged that defendants N2G Distributing, Inc., and Alpha Performance Labs infringed on Innovation's trademark and trade dress by producing and selling a competing energy drink under the trade name "6 Hour ENERGY shot" in similar packaging. Innovation later amended its complaint to add a claim for copyright infringement. On April 14, 2008, Judge Borman denied Innovation's motion for a preliminary injunction as to its trademark infringement claim but granted the motion as to its trade dress infringement claim. Concurrently, Judge Borman issued a "Preliminary Injunction and Recall Order" enjoining defendants from manufacturing or selling their product and requiring defendants to notify their distributors and retailers of the order and to have them return defendants' product. *See id.* (docket entries 26 and 28). On December 29, 2008, defendants filed tortious interference counterclaims alleging that Innovation had made "deceptive, misleading, and deliberately ambiguous statements" to various entities, including distributors and retailers of energy shots, to discourage them from dealing with defendants. Innovation did not disclose this lawsuit in answering Questions 24.A. or 24.B.

against Innovation for false designation of origin of products, false advertising and false description and representation (Count I), unfair competition (Count II), trademark dilution and injury to business reputation (Count III), unfair competition (Count IV), and business and product disparagement (Count V).[6]

While Innovation clearly was aware of its trademark dispute with NVE, it is not clear that Innovation answered Question 24.B. untruthfully by failing to disclose it. Unlike Question 24.A., Question 24.B. is qualified in that it asks about circumstances "arising out of the activities described in this application" that may result in a claim. The "activities" at issue are Innovation's advertising efforts and the content of its websites. It does not appear that Innovation's opposition to NVE's trademark and Innovation's "cybersquatting" are part of those activities. However, Innovation's decision to release an advertisement that allegedly misrepresented the scope of Judge Borman's preliminary injunction may well constitute advertising activity that should have been disclosed, depending on the timing. Innovation signed the insurance application on April 4, 2008. The preliminary injunction was issued on April 9, 2008. The policy was issued on April 26, 2008. NVE's complaint alleging that Innovation "has published or is about to publish the Subject Advertisement in numerous industry trade magazines" was filed on May 30, 2008. Whether Innovation knew before April 26, 2008, that it intended to issue this "advertisement" is unclear. Due to the lack of evidence from either side on this issue, the court is unable to rule on summary judgment as to whether Innovation made a material misrepresentation by answering "No" to Question 24.B.

---

[6] In July and September 2008, respectively, 08-2206 and 08-2707 were transferred to this court and consolidated with 08-11867. *See Innovation Ventures, LLC v. NVE, Inc.*, No. 08-11867 (E.D. Mich. Dec. 11, 2008) (docket entry 24).

For these reasons, the court shall deny the cross motions for summary judgment as to Count I of the complaint. Whether the insurance contract is void *ab initio* due to any material misrepresentations by Innovation in the insurance application will be determined at trial. However, the court shall grant Axis's motion for summary judgment on Count II of Innovation's counterclaim, entitled "Bad Faith Failure to Pay Claim." This counterclaim alleges that "AXIS' actions [in denying coverage] were undertaken in bad faith and in reckless disregard of its obligations under [the policy]." Counterclaim ¶ 19. As AXIS notes, Michigan does not recognize a separate "bad faith" cause of action against an insurer when, as here, the allegation is simply that the insurer wrongfully denied a claim under the policy. *See, e.g., Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401 (1980); *Runions v. Auto-Owners Ins. Co.*, 197 Mich. App. 105 (1992). *See also Jimkoski v. State Farm Mut. Auto. Ins. Co.*, 247 Fed.Appx. 654, 660 (6th Cir. 2007) ("as the district court explained, Michigan does not recognize an independent tort based on bad faith breach of an insurance contract. . . . A mere failure to perform an obligation under a contract 'cannot give rise to a negligence cause of action.' Thus, the district court did not err when it dismissed [plaintiff's] bad-faith-breach-of-insurance-contract claim.") (citations omitted). Innovation's sole remedy is for breach of contract, the claim it asserts in Count I of its counterclaim.

*Remaining Motions*

The parties have also filed a number of other motions, identified in the first paragraph of this opinion. Innovation's motion to strike the affidavit of Mary Schust [docket entry 58] is denied. As the senior vice-president of underwriting for AXIS and its predecessor, Schust is competent to testify about plaintiff's underwriting process and as to the materiality of the

information Innovation allegedly failed to provide on the insurance application. As the finder of fact in this matter, the court will determine at trial the weight to be given her testimony.

Innovation has filed a motion for partial summary judgment on Count II of the complaint [docket entry 52]. Instead of responding to this motion on the merits, AXIS has filed a motion to continue and stay briefing regarding Innovation's motion [docket entry 55]. In Count II of the complaint, AXIS seeks a declaration that it properly denied Innovation's claims under the policy because there is no coverage for various reasons. In its motion for partial summary judgment on this count, Innovation seeks summary judgment on all of these coverage defenses. AXIS objects and moves that the motion be continued and briefing on the motion stayed because, according to AXIS, the parties have focused their discovery efforts on fleshing out the material misrepresentations alleged in Count I. AXIS's counsel, Ronald Ohren, notes that following the last status conference held on January 19, 2010, the court issued a briefing schedule instructing the parties to file "cross motions for summary judgment . . . within thirty (30) days after Magistrate Judge Hluchaniuk issues his decision on [Innovation's] motion to compel production of plaintiff's insurance coverage opinion." *See* docket entry 46. Ohren indicates that he believed the parties were to address only Count I of the complaint in the summary judgment motions due by that deadline because, if this issue were to be resolved in AXIS's favor, the other defenses would be moot. *See* Ohren Aff. ¶¶ 3, 6-7.

In response, Innovation's counsel avers that no such "bifurcation" between Count I and Count II was ever discussed or ordered. Innovation argues that discovery is closed and that AXIS should be required to answer its motion on the merits.

The court does not recall "bifurcating" Count I and Count II. At the last status

conference, the parties indicated that they intended to file cross motions for summary judgment – which the court understood to include all issues – but that they preferred not to do so until after the magistrate judge ruled on Innovation's pending motion to compel discovery. The court therefore ordered that the cross motions for summary judgment be filed within 30 days after that ruling was issued. The magistrate judge did so on February 8, 2010, and the parties filed their cross motions for summary judgment, as directed, on March 10, 2010. By then, discovery was closed. The scheduling order issued on April 17, 2009, set October 2, 2009, as the discovery cutoff date. Discovery was subsequently extended until January 2010. Certainly by the time the parties filed their cross motions for summary judgment, discovery had been closed for some time, and no party has sought to extend it.

Additionally, the Ohren affidavit does not suffice under Fed. R. Civ. P. 56(f). Under that rule, the court may deny or continue a summary judgment motion if the non-moving party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." However, a Rule 56(f) affidavit must be specific. "Bare allegations or vague assertions of the need for discovery are not enough. [The affiant] must state with 'some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment.'" *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (citations omitted). Further, the affiant must explain "why the information has not been previously discovered." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 426 (6th Cir. 2009). In the present case, AXIS does not specifically identify the discovery it needs in order to oppose Innovation's motion. Nor does it offer any persuasive explanation as to why whatever discovery it may still need was not obtained during the approximately one-year period during which discovery was open in this

18

case.

Under these circumstances, the court shall deny AXIS's motion to continue and stay briefing. AXIS is directed to respond to Innovation's motion for partial summary judgment as to Count II within fourteen (14) days of the date of this opinion. Innovation may reply within seven (7) days thereafter.

Finally, the court grants the three motions for leave to file briefs in excess of the pages limits allowed by the court's local rules [docket entries 57, 60, 61]. Accordingly,

IT IS ORDERED that plaintiff's motion for partial summary judgment [docket entry 49] is denied as it relates to Count I of the complaint, but granted as it relates to Count II of the countercomplaint.

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment on AXIS's Count I [docket entry 53] is denied.

IT IS FURTHER ORDERED that plaintiff's motion to continue and stay briefing as to defendant's motion for partial summary judgment regarding Axis's Count II [docket entry 55] is denied.

IT IS FURTHER ORDERED that plaintiff shall respond to defendant's motion for partial summary judgment regarding Axis's Count II within fourteen (14) days of the date of this opinion. Defendant may reply within seven (7) days thereafter.

IT IS FURTHER ORDERED that defendant's motion to strike the affidavit of Mary Schust [docket entry 58] is denied.

IT IS FURTHER ORDERED that the three motions for leave to file briefs in excess of the pages limits allowed by the court's local rules [docket entries 57, 60, 61] are granted.

S/Bernard A. Friedman____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: August 4, 2010
       Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

S/Carol Mullins
Case Manager to Judge Friedman